1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  | CHARM FLORAL, a Hong Kong entity;          CASE NO. C10-1550-RSM
    | RAYMOND CHO, a resident of
11  | California,                                ORDER ON PLAINTIFFS' MOTION
    |                                            FOR SUMMARY JUDGMENT
12  |                    Plaintiffs,
    |
13  |          v.
    |
14  | WALD IMPORTS, LTD., a Washington
    | corporation; LOUIS R. WALD, and the
15  | marital community of Louis Wald and
    | Julie Wald, Washington residents,
16  |
    |                    Defendants.
17

18

19

## I. INTRODUCTION

20          This matter comes before the Court upon Plaintiff s' Motion for Summary Judgment.  For

21  the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

22

23

24

## II. DISCUSSION

**A. Background**

      For approximately thirty years, Plaintiff Charm Floral purchased products in China for Wald Imports, Ltd. ("WIL"). Charm Floral ("Charm") is a sole proprietorship entity organized under the laws of Hong Kong. It is owned and operated by Plaintiff Raymond Cho, a resident of California. WIL is a Washington corporation with its principal place of business in Kirkland, Washington. WIL's shares are divided amongst three parties: (1) Defendant Louis Wald, who owns sixty-eight percent of WIL, (2) Plaintiff Raymond Cho, who owns twenty-seven percent, and (3) a third individual who is not a party to this action. WIL's board of directors was likewise composed of Louis Wald, Raymond Cho, and another individual until January 2010, when Cho's directorship was terminated.

      This action was brought by Plaintiffs to recover debts owed to Charm by WIL. While WIL sometimes paid the Chinese factories directly, in most instances Charm advanced funds to the factories and WIL subsequently reimbursed Charm. Charm also invoiced WIL for bank fees, the cost of product samples, and its commission fees. Under the terms of the invoices, WIL was expected to make payment within thirty days of the invoice, with interest accruing on any past due amount. In 2009, WIL became delinquent in its financial obligations to Charm. Wald and Cho agreed to convert Charm's then-outstanding invoices of $201,372.11 to a term promissory note in June of that year in order to allow Wald to present a more solid financial picture to WIL's commercial lenders.

      A few months after the parties executed the promissory note, WIL discovered that Charm was not complying with a purported agreement they had entered into regarding the amount of Charm's commission. According to Defendants, the parties had agreed over 20 years ago that, in

exchange for Charm being WIL's exclusive buying agent in China, Charm would receive a 5% factory commission on the amount it paid to the Chinese factories and, in addition, it was entitled to add a 5% buyer's commission on its invoice to WIL (the "5&5 Agreement").  In August, 2009, WIL discovered that Charm was not operating in accordance with this agreement.  Rather, Defendants allege that, by engaging in a series of practices including receiving kickbacks from the factories, inflating invoices to WIL, and billing WIL for nonexistent charges, Charm was receiving up to 12% factory commission on the goods it supplied to WIL.

Although WIL had these suspicions, it continued to do business with Charm.  Plaintiffs allege that at this time, WIL and Wald began to run up a bill with Charm that it never intended to pay.  In 2009, Plaintiffs requested payment on past-due invoices.  Defendants responded that Plaintiffs had been overcharging WIL in violation of the oral agreement between the parties and the overcharges exceeded the amount due to Charm.

Meanwhile, in 2009, Mr. Wald transferred money from WIL into his personal accounts. Wald contends he returned all transferred funds.  However, Plaintiffs argue that Wald's accounting of his use of WIL's assets is incomplete.  Plaintiffs also argue that Wald is personally liable for the transfers as he is an alter ego of Defendant WIL.  Finally, Plaintiffs dispute the propriety of loans made by Wald and his father to WIL, wherein he and his father were granted security interests in the company's assets.

Through this lawsuit, Plaintiffs seek to recover the past-due balances and to enter judgment on the promissory note.  They also seek an accounting, avoidance of any fraudulent transfers, avoidance or equitable subordination of Wald and his father's security agreements, interest, and costs.  Plaintiffs bring claims for breach of contract, judgment on the promissory note, breach of fiduciary duty, and fraudulent transfer (under RCW 19.40.041).  Defendants, in

turn, seek damages against Plaintiffs for the alleged overcharges and subsequent conduct by

Charm, as well as fees and costs.  They bring claims for breach of contract, breach of fiduciary

duty, violation of the Consumer Protection Act ("CPA") (RCW 19.86 *et seq.*), fraud and

intentional misrepresentation, tortious interference, and unjust enrichment.

Plaintiffs now bring this motion for summary judgment, seeking dismissal of all of WIL's

counterclaims as well as summary judgment on Charm's breach of contract and promissory note

claims and Raymond Cho's breach of fiduciary duty claim.

**B. Analysis**

1. Motion to Strike

Plaintiffs move to strike certain documents placed into the record as exhibits to

Defendants' counsel's declaration as unauthenticated and as containing inadmissible hearsay.

*See* Dkt. No. 89.  The exhibits at issue are:

- Charm invoices to WIL (Ex. 3);

- Factory invoices to Charm (Ex. 4);

- Emails between employees of Charm and WIL (Exs. 5, 6, 8);

- Emails between Mr. Wald and Chris Topkey, a factory representative (Ex. 7);

- Business records translated from Chinese, including charm purchase orders to

factories, factory invoices to Charm, form letters from Chinese factories to WIL, and

the court certified translator's credentials (Ex. 9);

- Factory invoices to Charm and Charm purchase orders to factories (Ex. 11); and

- A Consent of Director of Wald Imports, Ltd. signed by Mr. Wald (Ex. 12).

In response to Plaintiffs' motion, Defendants filed a surreply, attached to which was a

supplemental sworn declaration signed by Mr. Wald attesting to the authenticity of each of the

disputed documents.  Dkt. No. 96

1   When ruling on a summary judgment motion, the Court may only consider admissible

2   evidence. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002) (excluding deposition

3   extracts because inadmissible due to inadequate authentication and hearsay); *Canada v. Blain's*

4   *Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1989) (excluding unauthenticated documents).

5   Authentication is a "condition precedent to admissibility," which is satisfied by evidence

6   sufficient to support the claim. *Orr,* 285 F.3d at 773. A document may be authenticated by a

7   witness with knowledge of the document or by any other manner permitted by Fed.R.Evid.

8   901(b) or 902.

9   Here, Exhibits 4, 9 and 11 were each produced by Charm during discovery associated

10  with this litigation.  Documents produced by a party in discovery are deemed authentic when

11  offered by the party-opponent.  *Orr,* 258 F.3d at 777, n. 20 (citing *Maljack Prods., Inc. v.*

12  *GoodTimes Home Video Corp.,* 81 F.3d 881, 889 n. 12 (9th Cir.1996); *Snyder v. Whittaker*

13  *Corp.,* 839 F.2d 1085, 1089 (5th Cir.1988); 31 *Federal Practice & Procedure: Evidence* § 7105,

14  at 39 ("Authentication can also be accomplished through judicial admissions such as ...

15  production of items in response to ... [a] discovery request.").  Documents 3, 5, 6, 7, 8, and 12

16  have been authenticated by Mr. Wald via his supplemental declaration as documents either

17  generated by him or received by him during the normal course of business.  *See* Dkt. No. 96.

18  The Court does not rely on the invoices received by WIL from the Chinese factories for the

19  purposes of this motion and therefore will not address their admissibility at this time.  Finally,

20  Plaintiffs assert that each of the documents also contain hearsay, but do not identify which

21  portions of the documents constitute hearsay.  Accordingly, the Court will not address this

22  objection.  Plaintiffs' motion to strike is DENIED.

23

24

1    2.  <u>Motion for Summary Judgment</u>

2        Summary judgment is appropriate where "the movant shows that there is no genuine

3    issue as to any material fact and that the movant is entitled to judgment as a matter of law."

4    FRCP 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).   In ruling on summary

5    judgment, a court does not weigh evidence to determine the truth of the matter, but "only

6    determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549

7    (9th Cir. 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747).  Material facts are those which

8    might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.

9        The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

10   *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), rev'd on other grounds, 512

11   U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential

12   element of her case with respect to which she has the burden of proof" to survive summary

13   judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of

14   a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

15   evidence on which the jury could reasonably find for the plaintiff."  *Id.*

16       a.  *Existence of the 5&5 Agreement*

17       The crux of Plaintiff's motion is that Defendants have failed to produce admissible

18   evidence demonstrating the formation of an agreement whereby Charm agreed to charge only

19   5% factory commission and 5% sales commission and WIL agreed to use Charm as its exclusive

20   agent.  Without this agreement, many of Defendants' claims necessarily fail.

21       A party asserting the existence of a contract bears the burden of proving each essential

22   element, including the existence of a mutual intention. *Johnson v. Nasi,* 50 Wash.2d 87, 91, 309

23   P.2d 380 (1957). "[B]are assertions of ultimate facts and conclusions of fact are alone

24   insufficient to defeat summary judgment." *Saluteen–Maschersky v. Countrywide Funding Corp.,*

105 Wash.App. 846, 852, 22 P.3d 804 (2001).  However, in Washington, "[a] contract may be oral as well as written, and a contract may be 'implied in fact with its existence depending on some act or conduct of the party sought to be charged.' A trial court may deduce mutual assent from the circumstances, whereby the court infers a contract based on a course of dealings between the parties or a common understanding within a particular commercial setting." *Hoglund v. Meeks,* 139 Wash.App. 854, 870–71, 170 P.3d 37 (2007) (citations omitted); *See also Jacob's Meadow Owners Ass'n,* 139 Wash.App. at 765, 162 P.3d 1153 ("The existence of mutual assent may be deduced from the circumstances, including the ordinary course of dealing between the parties.") (citations omitted).  "Whether parties manifested mutual assent to form a contract is generally a factual question." *Hoglund,* 139 Wash.App. at 870-71.

Here, Defendants have produced sufficient evidence regarding the parties' course of dealings to raise an issue of fact regarding whether the parties manifested mutual assent to form a contract.  Mr. Wald testified at his deposition that WIL entered into the agreement when his brother was the president of the company and that WIL and Charm have been operating under the 5&5 Agreement since then.  Dkt. No. 89, Ex. 1, p. 27.  He testified that he discussed the terms of the 5&5 Agreement with Charm employees – primarily Gordon Tsoi – "thousands of times" because each time Wald met with a Chinese company or factory representative, he instructed them on how to structure the pricing in accordance with the deal. *Id.* at p. 30-31. WIL's employee, Paul Lin, testified that he learned that Charm was WIL's agent when he started working at WIL and that a five percent commission was listed on nearly every invoice received from Charm.  Dkt. No. 89, Ex. 2, p. 35.  Indeed, Defendants have introduced several invoices sent by Charm to WIL confirming that Charm charged WIL a "5.00% Buying Commission" in each case.  Dkt. No. 89, Ex. 3.  In a 2007 email to Mr. Lin and Mr. Wald , Mr. Tsoi wrote that

"we will also add our 5% to the unit price," suggesting that Mr. Wald and Mr. Lin would understand the reference. Dkt. No. 89, Ex. 5. Finally, a May 2008 email exchange between Mr. Tsoi and Mr. Wald support the existence of a 5&5 Agreement:

> ***Gordon Tsoi***: … Enclosed is what we got from Shenzhen Haoyuan. Please be noted that the pricing does not include our 5% commission. . . .

> ***Louis Wald***: . . . Please clarify if the 5% commission you refer to is the 5% you get from the factory, or the 5% you get from us.

> ***Gordon Tsoi***: . . . This is refer to the 5% we get from factory.

Dkt. No. 89. Ex. 6.

Thus the evidence is not, as Plaintiffs suggest, limited to bare assertions by Mr. Wald that a contract existed between WIL and Charm. *Cf. Saluteen-Maschersky,* 105 Wash.App. at 854 (homeowner claimed he had reached refinancing agreement with lender but provided no evidence beyond his own declaration to support the existence of an oral contract). Rather, Mr. Wald contends there is a contract, and has also put forward more than a scintilla of evidence about the course of dealings between WIL and Charm from which a factfinder could deduce mutual assent to the terms as stated by Mr. Wald. *See Hoglund,* 139 Wash.App. at 870–71 (permitting a trial court to deduce mutual assent through the circumstances of a parties' relationship). Indeed, Plaintiffs "appear[] to confuse the concept of making a bare assertion (e.g., 'there was an oral contract') with making a statement that, if believed by a factfinder, would support the legal contention." *See Crown Plaza Corp. v. Synapse Software Sys., Inc.,* 87 Wash.App. 495, 501, 962 P.2d 824 (1997). Defendants' motion for summary judgment is DENIED to the extent it is predicated on Plaintiffs' failure to produce evidence of the existence of a contract.

1

*b. Statute of Limitations*

2       Plaintiffs seek summary judgment on each of Defendants' counterclaims that exceed the

3  relevant statute of limitations.  The statute of limitations for an action asserting breach of an oral

4  contract is three years.  RCW 4.16.080(3).   A claim for breach of contract accrues from the time

5  of the breach.  *Taylor v. Puget Sound Power & Light Co.*, 64 Wash.2d 534, 538 (1964).  As a

6  result, any contract claim that accrued more than three years before September 27, 2010 – the

7  date upon which the complaint was filed in this case – is barred by the statute of limitations.  *See*

8  *J.R. Simplot Co. v. Vogt,* 93 Wn.2d 122, 126 (1980) (holding that the statute of limitations on

9  counterclaims relates back to the date the complaint was filed).

10     Defendants argue that the discovery rule tolls the statute of limitations in this case.  The

11  Court disagrees.  "Under the discovery rule, a cause of action does not accrue—and as a result

12  the statute of limitations does not begin to run—until the plaintiff knows, or has reason to know,

13  the factual basis for the cause of action." *Bowles v. Wash. Dep't of Ret. Sys.,* 121 Wash.2d 52,

14  79–80, 847 P.2d 440 (1993).  However, the Washington Supreme Court "has consistently held

15  that accrual of a contract action occurs on breach" and that the discovery rule does not apply to

16  actions for breach of contract.  *1000 Virginia Ltd. P'ship v. Vertecs Corp.,* 158 Wash.2d at 576,

17  575-78 (2006).   In *1000 Virginia Limited Partnership,* the Supreme Court adopted the discovery

18  rule in the limited context of "actions on construction contracts involving allegations of latent

19  construction defects." *Id.* at 590, 146 P.3d 423.  This case does not involve a construction

20  contract and the exception to the rule that the discovery rule does not apply in contract cases

21  does not apply here.  *See Kinney v. Cook*, 150 Wash.App. 187, 193 (2009) ("[I]n contract actions

22  the claim accrues on breach absent an exception such as that created for construction contracts.")

23  (citing *1000 Virginia Ltd. P'ship,* 158 Wash.2d at 578–83).  Finally, the Court declines

24  Defendants' invitation to extend the exception announced in *1000 Virginia Ltd. P'ship* to this

1  case as it is not this Court's place to do so.  *See id.* at 578 (holding that the Washington Court of

2  Appeals lacked authority to apply the discovery rule in a contract dispute "[b]ecause controlling

3  precedent held that a claim arising out of a contract accrued on breach and not on discovery").

4  Plaintiffs' motion for summary judgment on all breach of contract counterclaims exceeding the

5  three-year statute of limitations is GRANTED.

6      Claims for fraud and breach of fiduciary duty are also subject to a three-year statute of

7  limitations.  RCW 4.16.080(4); RCW 4.16.080(2) and *Mayer v. Huesner,* 126 Wn. App. 114, 123

8  (2005).  A claim for violation of the CPA must be brought within four years.  RCW 19.86.120.

9  In contrast to breach of contract claims, all three of these claims are subject to the discovery rule.

10  RCW 4.16.080(4) (fraud); *Mayer,* 126 Wn.App. at 123 (breach of fiduciary duty); *Reeves v.*

11  *Teuscher*, 881 F.2d 1495, 1501 (1989) (CPA). The discovery rule requires that "when a plaintiff

12  is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the

13  plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The

14  plaintiff is charged with what a reasonable inquiry would have discovered." *Green,* 136 Wash.2d

15  at 96, 960 P.2d 912. "A person who has notice of facts that are sufficient to put him or her upon

16  inquiry notice is deemed to have notice of all facts that reasonable inquiry would disclose."

17  *1000 Virginia Ltd. Partnership,* 158 Wash.2d at 581 (internal citations omitted).  Whether the

18  plaintiff should have been able to discover the wrongdoing is a question of fact.  *Id.*

19      Plaintiffs argue that the discovery rule does not toll the statute of limitations here because

20  reasonable minds would agree that WIL could have discovered through reasonable diligence

21  Charm Floral's alleged "overcharge" conduct as early as 2002.    Plaintiffs point to Mr. Wald's

22  deposition testimony in which he indicated that a Chinese factory told him in 2002 that Charm

23  Floral was attempting to overcharge WIL.  Dkt. No. 82, pp. 66-67.   Mr. Wald also stated in a

24

letter to Charm Floral in October 2009 that he "had suspected that [Charm Floral] was doing this." *Id.* at p. 79.  Finally, Mr. Wald and other WIL employees testified that they had had concerns about Charm Floral's pricing in comparison to the pricing of their competitors' products. *Id.* at Exs. 2-5.  WIL never raised this issue with Charm Floral or the Chinese Factories and never requested the Chinese factories' copies of the transaction documents until shortly before this litigation ensued.

Having considered the evidence carefully, the Court concludes that a genuine issue of material fact remains whether WIL and Mr. Wald engaged in a reasonable inquiry upon being put on notice that Charm may have been engaged in overcharging.  It is undisputed that about "seven years before" June 21st, 2009, a supplier told Mr. Wald "that Charm asked them to add up to 15% of the price they quoted to [WIL]".  Dkt. No. 82, p. 66.  However, the circumstances around that single incident – the reliability of the source, the relationship between the source and Mr. Wald – are unclear.  As a result, it is difficult on summary judgment to determine what a reasonably diligent inquiry would look like in response to such a communication.  Moreover, it is not the case that Mr. Wald failed to engage in *any* inquiry in response to his suspicions that overcharges were taking place.  Mr. Wald testified that when he met with factory representatives he would ask Gordon Tsoi to confirm that Charm was only charging the factories five percent. *Id.* at p. 69.  According to Mr. Wald, Mr. Tsoi confirmed that the factories were only receiving five percent.  The fact that Defendants never sought copies of the invoices Charm Floral sent to factories is not dispositive, nor is the fact that Defendants did not confront Ms. Cho or Mr. Cho prior to 2009.  A reasonable jury could find that such actions were not reasonably necessary, given Mr. Tsoi's representations that only 5% was being charged.  Thus, summary judgment is

1     DENIED on the statute of limitations issue with respect to Plaintiffs' claims for fraud, breach of

2     fiduciary duty, and violation of the CPA for the purposes of summary judgment.

3         *c.   CPA claim*

4         To establish a violation of the CPA, a party must establish five elements: (1) an unfair or

5     deceptive act or practice; (2) occurring within trade or business; (3) affecting the public interest;

6     (4) injuring the plaintiff's business or property; and (5) a causal relationship between the other

7     party's deceptive act and the resulting injury. *Hangman Ridge Training Stables, Inc. v. Safeco*

8     *Title Ins. Co.*, 105 Wash.2d 778, 780 (Wash. 1986).  Plaintiffs move for summary judgment on

9     Plaintiff's CPA claim because Plaintiffs have failed to introduce any evidence establishing the

10    "public interest" element of a CPA claim.  Defendants cite to a 2009 amendment to the CPA

11    making it easier to establish the "public interest" component in private CPA actions.  The

12    amendment provides:

> In a private action in which an unfair or deceptive act or practice is alleged under
> RCW 19.86.020, a claimant may establish that the act or practice is injurious to
> the public interest because it … (3)(a) Injured other persons; (b) had the capacity
> to injure other persons; or (c) has the capacity to injure other persons.

15    RCW 19.86.093.  Relying on the amendment, Defendants argue that Charm had "the capacity to

16    injure other persons" because its overcharging scheme could be carried out against any enterprise

17    engaging Charm as its buyer.

18         Without addressing whether the 2009 amendment applies to Defendants' claims in this

19    action, the Court finds that Defendants have failed to establish a public interest element to their

20    claim against Charm.  There is no evidence in the record that any other entity – let alone any

21    Washington entity – had relationships with Charm that could subject it to the kind of

22    overcharging that Defendants allegedly experienced.  Moreover, there is no evidence in the

23    record regarding the usage of trade in the industry – e.g., whether oral contracts like the 5&5

1   Agreement were standard in the industry, or whether buyers typically act independently, as in a

2   market – that could establish even the possibility that an overcharge could occur among other

3   parties.  Plaintiffs' motion for summary judgment on Defendants' CPA counterclaim is

4   GRANTED.

5        *d.  Tortious Interference*

6        A claim of tortious interference requires (1) the existence of a valid contractual

7   relationship of which the defendant has knowledge, (2) intentional interference with an improper

8   motive or by improper means that causes breach or termination of the contractual relationship,

9   and (3) resultant damage. *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wash.2d 133, 157,

10  930 P.2d 288 (1997).   Here, the only evidence in the record regarding damages resulting from

11  tortious interference is Mr. Wald's deposition testimony. Mr. Wald testifies as follows:

12       Q.     Had you been doing business with those factories prior to that?

13       A.     Yes.

14       . . .

15       Q.     And did all those factories then stop doing business with Wald Imports?

16       A.     No.

17       Q.     Which ones did?

18       A.     I don't recall all the names.

19       . . .

20       Q.     Do you know whether Wald Imports lost any money as a result of those
    factories stopping doing business with them?

21
    A.     Yeah, we had to – we had to spend extra – extra time and money, you
22  know, re-sourcing products.

23       Q.     How much?

24

1

2

   A.  I don't know.  I mean, I didn't put it in the claim because it's not significant.

3

   Q.  Other than spending extra time and money re-sourcing other products, did Wald Imports lose any money as a result of the factories ceasing their business with Wald Imports?

4

5

   A.  I don't think so.

6

   Q.  Is there anybody else other than you that would know the answer to that?

7

   A.  Again, Paul might have a clue, but I don't think it's – I don't think it's material.

8

Dkt. No. 82, pp. 51-52.

9

   Plaintiffs argue that the above testimony indicates that Defendants did not suffer damage

10

as a result of the alleged tortious interference.  The Court views the above testimony as

11

indicating some modicum of damages from the factories not doing business with Defendants.

12

While Mr. Wald indicates that he "didn't put it in the claim," the Court will not assume that Mr.

13

Wald – who is not an attorney – intended to relinquish his tortious interference claim through

14

this ambiguous testimony.  Plaintiffs' motion for summary judgment on Defendants' tortious

15

interference claim is DENIED.

16

   *e. Affirmative Defenses*

17

   Plaintiffs move for summary judgment on each of Defendants' affirmative defenses.  The

18

motion is denied to the extent that it is predicated on Defendants' failure to prove the existence

19

of the 5&5 Agreement, as the Court has resolved this issue in favor of Defendants.  *See* Part

20

II(B)(2)(a), *supra*.  Thus, affirmative defense numbers 2(offset), 3 (fraud), 4 (comparative fault),

21

7 (failure to mitigate), 8 (unclean hands), and 9 (in pari delicto) remain.  The remaining

22

affirmative defenses are dismissed because Defendants failed to respond to Plaintiffs' motion for

23

24

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 14

1    summary judgment regarding these defenses; because Defendants failed to raise an issue of

2    material fact regarding these defenses; and/or these defenses are barred as a matter of law.

3           First, the defenses of estoppel and waiver are dismissed because Defendants have not

4    produced any evidence to support either of these theories and have not argued to the Court why

5    these defenses should not be dismissed.  *See* Dkt. No. 82, p. 60 ("Q: Did you ever hear anyone at

6    Charm Floral state that Wald Imports did not have to pay for those goods?  A: No.").  *See also*

7    Local Rule 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be

8    considered by the court as an admission that the motion has merit.")  Second, neither party

9    contends that there were any prior related actions regarding this matter.  Thus, summary

10   judgment is entered on the affirmative defenses of "res judicata" and "collateral estoppel."  *See*

11   *Headwaters Inc. v. U.S. Forest Service,* 399 F.3d 1047, 1050-52 (9th Cir.2005) (holding that one

12   of the elements necessary to establish *res judicata* is "a final judgment on the merits"); *Ashe v.*

13   *Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (holding that collateral

14   estoppel applies "when an issue of ultimate fact has once been determined by a valid and final

15   judgment").  Third, Defendants have produced no evidence that would support an affirmative

16   defense of statute of limitations as to any of Plaintiffs' claims, nor did they argue in their

17   response brief that the statute of limitations applies as to any of Plaintiffs' claims.  The Court

18   thus enters summary judgment on this issue as well.  Finally, "frivolousness" is not an

19   affirmative defense; summary judgment is entered as to this affirmative defense on the basis that

20   it cannot be proven.

21          *f.   Charm's breach of contract and promissory note claims*

22          The Court DENIES Plaintiffs' motion for summary judgment on their breach of contract

23   and promissory note claims because the affirmative defenses of offset, fraud, comparative fault,

24   failure to mitigate, unclean hands, and *in pari delicto* remain.

1

    *g.  Raymond Cho's breach of fiduciary duty claim*

2

    To establish a claim for breach of fiduciary duty, a party must establish (i) the existence

3

of a duty owed to them; (ii) a breach of that duty; (iii) a resulting injury; and (iv) that the claimed

4

breach was a proximate cause of the injury.  *See Miller v. U.S. Bank of Washington, N.A.,* 72

5

Wn. App. 416, 425 (1994).   Here, the Court has already held that Mr. Wald owed a fiduciary

6

duty to Raymond Cho.  Dkt. No. 46, p. 5 ("Defendant Wald, in his capacity as a director and

7

majority shareholder of a closely held corporation, owes Plaintiff Cho a fiduciary duty due to his

8

status as a minority shareholder.").  Plaintiffs now seek partial summary judgment on their

9

breach of fiduciary duty claims on the basis that Mr. Wald's decision to grant himself and his

10

father a security interest in all of WIL's assets breached the fiduciary duty he owed to Mr. Cho

11

as a minority shareholder.

12

    The Court largely agrees with Plaintiffs.  Wald's attempt to enter into secured lending

13

transactions with WIL, without the consent or ratification of the WIL Board of Directors, is a

14

breach of his fiduciary duty. *See Agronic Corp. of Am. v. deBough*, 21 Wn. App. 459, 462, 585

15

P.2d 821 (1978) (noting trial court's finding that the "principal stockholder, director, and

16

president of the corporation" breached his fiduciary duties by granting a related party "a security

17

interest in assets of [the corporation] to secure [the related party's] loan to [the corporation]

18

without the knowledge of or authority from the board of directors").  However, the Court

19

previously held that Plaintiffs had failed to offer support for the proposition that WIL owed Mr.

20

Cho a fiduciary duty in his capacity as the sole proprietor of Charm Floral.  *See* Dkt. No. 42, p. 6.

21

And WIL owed a debt to *Charm Floral*, not to Mr. Cho.

22

    It may very well be that Mr. Cho is Charm Floral's alter ego.  Indeed, Defendants'

23

pleadings suggest that is the case.  *See* Dkt. No. 78, ¶ 16 ("Upon information and belief, Cho so

24

dominates and controls Charm that he is its alter ego. … [T]here is a unity of ownership and

1  interest [and] … separateness should be disregarded.").  Moreover, Mr. Cho's directorship may

2  have been improperly terminated, which would render WIL indebted to Mr. Cho for $2,000 per

3  month in directorship fees since 2010.  *Id.*  If this were established, then Mr. Cho could

4  potentially argue injury to himself *personally* arising out of Mr. Wald's improper lending

5  transactions.  Nonetheless, neither the fact that Mr. Cho is Charm's alter ego, nor the fact that

6  Charm owes Mr. Cho a debt, has been established at this point in the litigation.  Accordingly,

7  factual issues remain as to Plaintiffs' claims for breach of fiduciary duty and the motion for

8  partial summary judgment is DENIED

9                                **III. CONCLUSION**

10         Having reviewed Plaintiff's motion, the response and the reply, all declarations and

11  attached exhibits, and the remainder of the record, the Court hereby finds and orders:

12         (1) Plaintiffs' motion is granted in part and denied in part as set forth above.

13         (2) The Clerk of the Court is directed to forward a copy of this motion to all counsel of

14             record.

15         Dated this 9th day of February 2012.

16

17

18

19                              RICARDO S. MARTINEZ
                               UNITED STATES DISTRICT JUDGE
20

21

22

23

24